IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLORADO

TELESFORO JOSEPH DOMINGUEZ,   )
     Plaintiff,   )
 v.   )
   )
ROBERT PINO, EDUARDO   )
RODRIGUEZ, MICHAEL   )
MARTINEZ,  THOMAS MASIAS,   )   Civil Action No. _____
EVAN LOPEZ, JAMES GRAYSON   )
FORREST NEUERBURG,   )
and the CITY OF MONTE VISTA,   )
COLORADO   )

     Defendants.

---

## COMPLAINT

---

Plaintiff, through counsel, alleges as follows:

### THE PARTIES, JURISDICTION & VENUE

1.  At all material times, Plaintiff Telesforo Joseph Dominguez was an individual residing in the State of Colorado, County of Rio Grande, and City of Monte Vista.

2.  At all material times, Defendant Robert Pino was employed as an officer in the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

3.  At all material times, Defendant Eduardo Rodriguez was employed as an officer in the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

4.  At all material times, Defendant Michael Martinez was employed as an officer in the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

1

5.     At all material times, Defendant Thomas Masias was employed as an officer in the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

6.     At all material times, Defendant Evan Lopez was employed as an officer in the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

7.     At all material times, Defendant James Grayson was employed as the Chief of the Monte Vista Police Department by the Defendant City of Monte Vista, Colorado.

8.     At all times material to the allegations contained herein, Defendant Forrest Neuerburg was employed as the City Manager by the Defendant City of Monte Vista, Colorado.

9.     At all material times, Defendant City of Monte Vista was and is a municipal corporation within the State of Colorado and operates the Monte Vista Police Department.

10.     At all material times, the individual Defendants were acting under color of state law.

11.     The plaintiff seeks damages in excess of $75,000.00.

12.     Jurisdiction in this Court is premised upon 28 U.S.C. §§ 1331 (federal question pursuant to 42 U.S.C. 1983), 1332(a) and because the Plaintiff claims that the Defendants violated his civil rights, contrary to 42 U.S.C. § 1983, and in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution.

## <u>GENERAL ALLEGATIONS</u>

13.     Mr. Dominguez resides in a home near the home of Bobby and Isabella Pino (the "Pinos").

14.     The Pinos are the parents of Officer Robert Pino.

15.     An alley (the "Alley") runs between the Dominguez' home and the Pinos' home.

16.     In December 2015 and January 2016, Thomas Masias was the Monte Vista City Ordinance Officer.

17.     During the week December 7, 2015, Ordinance Officer Masias issued a notice to the Pinos, stating that the Alley required attention.

18.     During a period from December 11, 2015 to December 14, 2015, Mr. Dominguez encountered Officer Robert Pino several times to discuss debris in the Alley.

19.     During several of these encounters, Officer Robert Pino grew agitated.

20.     During several of these encounters, Officer Robert Pino threatened Mr. Dominguez with physical harm.

21.     On the evening of December 11, 2015:

    a.  Officer Robert Pino was off duty.

    b.  Officer Robert Pino was working in his parents' back yard.

    c.  Mr. Dominguez observed Officer Robert Pino throwing trash, dog feces, yard waste, and other debris from his parents' back yard into the Alley.

    d.  Mr. Dominguez asked Officer Robert Pino to clean up the mess in the Alley.

22.     On the morning of December 12, 2015:

    a.  Mr. Dominguez observed that the mess made by Officer Robert Pino remained in the Alley.

    b.  Mr. Dominguez visited the home of Bobby and Isabella Pino to discuss the debris in the Alley. The following events occurred during Dominguez' visit to the Pino residence:

        i.  Mr. Dominguez raised the issue in a civil manner.

      ii.   Bobby Pino became enraged without provocation.

     iii.   Bobby Pino shouted obscenities at Mr. Dominguez, calling him a "fucking idiot," telling him to "get the fuck off" his property, and telling him that he would kick his ass.

     iv.   Bobby Pino told Mr. Dominguez to complain to the police department if he had a problem with the condition of the Alley or his sons' work.

     v.   Mr. Dominguez left the Pino residence and returned home.

23.    After returning home on December 12, 2015, Mr. Dominguez observed police vehicles driving up and down the Alley several times that day.

24.    On December 13, 2015:

    a.   Mr. Dominguez again observed police vehicles driving up and down the Alley several times.

    b.   Mr. Dominguez' son observed that the driver of one of those police vehicles was Officer David Pino.

    c.   Officer David Pino is the brother of Officer Robert Pino.

    d.   Officer David Pino is also employed by the Monte Vista Police Department.

    e.   Later on December 13, 2015, Mr. Dominguez left his home and observed that Officer David Pino followed him out of the subdivision in his patrol car.

25.    Mr. Dominguez believed that Officer David Pino's actions in following him were unjustified and believed the conduct to be an act of intimidation and retaliation in response to Dominguez' concerns about the condition of the Alley.

26.    Mr. Dominguez reported Officer David Pino's conduct to the Mayor of Monte

Vista, Debbie Garcia.

27.    On December 14, 2015:

    a.    Mr. Dominguez contacted Ordinance Officer Thomas Masias to address the situation in the Alley:

    b.    After speaking briefly offsite, Ordinance Officer Masias accompanied Mr. Dominguez to the Alley.

    c.    Upon seeing the mess, Ordinance Officer Masias told Mr. Dominguez that he would speak with the Pinos about it.

    d.    As Mr. Dominguez and Ordinance Officer Masias were talking, Officer Robert Pino and his brother, Steven Pino, were standing in the Pinos' back yard.

    e.    After concluding his conversation with Mr. Dominguez in the Alley, Ordinance Officer Masias entered his vehicle and drove down the Alley.

    f.    After Ordinance Officer Masias had entered his vehicle, Steven Pino opened the gate to the Alley and Officer Robert Pino stepped into the Alley.

    g.    Officer Robert Pino began to insult and taunt Mr. Dominguez.

    h.    Officer Robert Pino waved a metal wand at Mr. Dominguez in an intimidating manner.

    i.    Officer Robert Pino taunted Mr. Dominguez to "Go ahead and call the cops! They aren't going to do a fucking thing about it! We are the fucking cops!"

    j.    Officer Robert Pino told Mr. Dominguez that he was going to "fuck him up" and "kick his old man ass."

k.   Mr. Dominguez observed that Ordinance Officer Masias had stopped approximately thirty feet down the Alley to speak with another neighbor.

l.   Mr. Dominguez reported Officer Robert Pino's conduct to Ordinance Officer Masias.

m.   Ordinance Officer Masias instructed Mr. Dominguez to return to his yard.

n.   Officer Robert Pino followed Mr. Dominguez as he retreated to his residence, continuing to threaten Dominguez with bodily harm by raising his fists and shouting obscenities.

o.   In response to Officer Robert Pino's aggressions, Mr. Dominguez said to Officer Robert Pino, "If you want me that bad, you're gonna have to throw the first punch."

p.   Officer Robert Pino held his fist clenched above Mr. Dominguez' head, as if ready to strike.

q.   Mr. Dominguez took a defensive stance, preparing to be punched by Officer Robert Pino.

r.   At that moment, Mr. Dominguez' wife, Sandra, came outside and intervened between Officer Robert Pino and Dominguez.

s.   Ordinance Officer Masias and Steven Pino also arrived in Mr. Dominguez' back yard at or around the same time that Sandra Dominguez intervened.

t.   Steven Pino physically pulled Officer Robert Pino back away from Mr. Dominguez.

u.   Officer Robert Pino then told Mrs. Dominguez to "get the fuck inside."

> v. Mr. Dominguez, disgusted by Officer Robert Pino's conduct, said, "You're nothing but a blimp and a Baby Huey."
>
> w. Ordinance Officer Masias ordered Mr. Dominguez to go inside.

28. At approximately 11:15 a.m. on December 14, 2015, Corporal Eduardo Rodriguez and Officer Michael Martinez were dispatched to the Pino residence in response to a report of harassment called in by Officer Robert Pino.

29. On December 14, 2015, Corporal Rodriguez and Officer Martinez met with Officer Robert Pino.

30. Officer Robert Pino is a colleague of Corporal Rodriguez and Officer Martinez.

31. During Corporal Rodriguez' and Officer Martinez' initial interview of Officer Robert Pino, Pino made several false statements:

> a. Officer Robert Pino falsely stated that Mr. Dominguez had shouted obscenities at Officer Robert Pino;
>
> b. Officer Robert Pino falsely stated that Mr. Dominguez had insulted Officer Robert Pino and his family, and
>
> c. Officer Robert Pino falsely stated that Mr. Dominguez had taken a fighting stance as if to incite a fight.

32. Corporal Rodriguez and Officer Martinez then spoke with Steven Pino.

33. During his interview with Corporal Rodriguez and Officer Martinez, Steven Pino generally confirmed Officer Robert Pino's version of events.

34. Steven Pino also made false statements to Corporal Rodriguez and Officer Martinez, namely:

a.  Steven Pino falsely stated that Mr. Dominguez had told Officer Robert Pino that he had "kicked bigger guys asses for less;" and

b.  Steven Pino falsely stated that Officer Robert Pino generally stayed calm during the encounters with Mr. Dominguez.

35.  During the responding officers' initial investigation on December 14, 2015, Officer David Pino arrived on the scene.

36.  Despite being on duty and on the scene that day, Officer David Pino did not file a report about his involvement in responding to his brother's report that Mr. Dominguez had harassed him.

37.  Corporal Rodriguez and Officer Martinez spoke with Ordinance Officer Masias after speaking with the Pino brothers.

38.  Ordinance Officer Masias gave the following information to Corporal Rodriguez and Officer Martinez during the December 14, 2015 interview:

a.  Ordinance Officer Masias informed the responding officers that Officer Robert Pino had followed Mr. Dominguez to his property and continued with the argument.

b.  Ordinance Officer Masias falsely stated that he heard Mr. Dominguez tell Officer Robert Pino, "I may be an old man, but I can whip your fat ass."

c.  Ordinance Officer Masias said that he had spoken with a person in the Alley while the encounter between Mr. Dominguez and Officer Robert Pino was escalating.

d.  Ordinance Officer Masias stated that this person with whom he was speaking

8

in the Alley had observed part of the encounter.

39.     During his interview with Corporal Rodriguez and Officer Martinez, Ordinance Officer Masias did not identify the witness with whom he had been speaking in the Alley.

40.     Officer Robert Pino was a 31 year old police officer at the time of the incident.

41.     Mr. Dominguez was a 73 year old disabled retiree at the time of the incident.

42.     Officer Robert Pino was much younger and much larger than Mr. Dominguez at the time of the incident.

43.     Mr. Dominguez felt physically threatened during his encounters with Officer Robert Pino.

44.     Upon information and belief, Officer Robert Pino exploited role as an officer on the Monte Vista Police force by:

    a.  Taking advantage of his relationships with his "brothers in blue" on the Monte Vista Police force to improperly persuade them that Mr. Dominguez harassed him; and

    b.  Attempting to discredit Mr. Dominguez;

    c.  Falsely accusing Mr. Dominguez of committing the crime of harassment.

45.     Officer Robert Pino falsely omitted any information about his own misconduct during his encounters with Mr. Dominguez:

    a.  Officer Robert Pino failed to report his threats to kick Mr. Dominguez' ass;

    b.  Officer Robert Pino failed to report his invocation of authority as a police officer; and

    c.  Officer Robert Pino failed to report his impunity regarding the city ordinance

requiring maintenance of the alleys.

46.     Officer Robert Pino, Steven Pino, and Ordinance Officer Masias submitted voluntary written statements to the Monte Vista Police Department dated December 14, 2015 detailing their own accounts of the events described herein.

47.     The written statements submitted by Officer Robert Pino, Steven Pino, and Ordinance Officer Thomas Masias contain similar statements to those described in paragraphs 31, 33, 34, 38 and 45, herein.

48.     On December 14, 2015, Forrest Neuerburg, the City Manager of the City of Monte Vista, called Mr. Dominguez to discuss Officer Pino's actions:

    a.  Mr. Neuerburg asked Mr. Dominguez to write a statement regarding the events.

    b.  Mr. Dominguez informed Mr. Neuerburg that he intended to do so and would deliver a copy of the same to the City Council.

    c.  Mr. Neuerburg discouraged Mr. Dominguez from delivering a statement to the City Council, informing Dominguez that the City Council had nothing to do with it.

49.     On December 15, 2015, a full day after meeting with Officer Robert Pino, Steven Pino, Officer David Pino and Ordinance Officer Masias, Corporal Rodriguez and Officer Martinez spoke with Mr. Dominguez at his residence:

    a.  Corporal Rodriguez and Officer Martinez informed Mr. Dominguez that Officer Robert Pino had complained that Dominguez had harassed him.

    b.  Mr. Dominguez reported the events to Corporal Rodriguez and Officer

Martinez as they are recounted in paragraph 27 and as stated below:

    i. Officer Robert Pino taunted and physically threatened Mr. Dominguez.

    ii. Although Mr. Dominguez admits that he told Officer Robert Pino that he was disappointed in him and called him a "Baby Huey" and a "blimp," Dominguez never threatened Officer Robert Pino or anyone else.

    iii. Mr. Dominguez did not take a fighting stance.

    iv. Mr. Dominguez did not tell Officer Robert Pino that he would kick his ass.

    v. Mr. Dominguez did not insult, taunt challenge, or make any communication in offensively coarse language to Officer Robert Pino, Bobby Pino, or anyone else during his encounters with the Defendants.

    vi. Mr. Dominguez did not do anything that could be construed as harassment within the meaning of section 18-9-111(1)(a)-(h), C.R.S. at any time material to the events described herein.

50.    On December 15, 2015, during the discussion between Corporal Rodriguez, Officer Martinez, and Mr. Dominguez at the Dominguez residence, Ordinance Officer Masias arrived to tell Mr. Dominguez that he had instructed the Pinos to clean up the Alley. In the presence of Corporal Rodriguez and Officer Martinez:

    a. Mr. Dominguez asked Ordinance Officer Masias whether he had observed Dominguez harassing Officer Robert Pino.

b. Ordinance Officer Masias stated that the only thing that he had heard Mr. Dominguez say to Officer Robert Pino was that he was ashamed of Pino for the job that he had done in the Alley.

51.     Corporal Rodriguez and Officer Martinez stepped aside for a private discussion.

52.     When they returned, Corporal Rodriguez and Officer Martinez informed Mr. Dominguez that they had decided not to file the charges at that time.

53.     On or about December 15, 2015, Corporal Eduardo Rodriguez and Officer Michael Martinez determined that they would not take any further action on the matter.

54.     On or about December 15, 2015, Corporal Eduardo Rodriguez and Officer Michael Martinez decided not to file any charges against anyone involved, including Dominguez.

55.     On or about December 15, 2015, Corporal Rodriguez and Officer Martinez stated that they would wait for Chief James Grayson to return from out of town to decide how to proceed.

56.     Neither Corporal Rodriguez nor Officer Martinez filed a formal narrative about the December 15, 2015 encounter with Mr. Dominguez.

57.     On December 17, 2016, Mr. Dominguez spoke publicly at a City Council meeting about his encounters with the police Defendants.

58.     Although Corporal Rodriguez and Officer Martinez had decided not to file any charges against Mr. Dominguez on approximately December 15, 2015, Chief James Grayson directed Corporal Rodriguez to reopen the matter on December 21, 2015.

59.     Upon information and belief, Chief James Grayson ordered the matter to be

reopened because Mr. Dominguez had spoken publicly about the incident at the Monte Vista City Council Meeting.

60.    Corporal Rodriguez conducted an investigation pursuant to Chief James Grayson's direction:

      a.   Corporal Rodriguez obtained a written statement from Isabella Pino;

      b.   Corporal Rodriguez conducted a follow-up interview with Mr. Dominguez;

      c.   Corporal Rodriguez conducted a follow-up interview with Officer Robert Pino;

      d.   Corporal Rodriguez conducted a follow-up interview with Ordinance Officer Thomas Masias;

      e.   Corporal Rodriguez interviewed Mayor Debbie Garcia; and

      f.   Corporal Rodriguez interviewed City Councilmember Joe Schlabach.

61.    Neither Corporal Rodriguez, nor anyone else on staff with the Monte Vista Police Department, attempted to identify or interview the person with whom Ordinance Officer Thomas Masias was speaking on December 14, 2015 in the Alley while the encounter between Mr. Dominguez and Officer Robert Pino was escalating.

62.    Corporal Rodriguez failed to formally interview any of Mr. Dominguez' family members who were present during any of the events described herein.

63.    During the videotaped interview with City Councilmember Joe Schlabach, Mr. Schlabach stated to Corporal Rodriguez, "I understand that this is pretty difficult for you, you're talking about a brother in blue."

64.    During the videotaped interview with City Councilmember Joe Schlabach,

Corporal Rodriguez made several statements which indicate that his investigation into the matter was biased in favor of his fellow officers:

    a.   Corporal Rodriguez stated: "Yeah, that's the thing. You hear different types of things where you have to back them up no matter what..."

    b.   Corporal Rodriguez stated: "I know Officer Pino, and I can't say what his exact personality is. David Pino is firm, he does his job…I don't think he's a person who abuses authority from what I've seen and observed working with him."

    c.   Corporal Rodriguez stated, "I know sometimes people don't want to be named because they think brothers in blue stick together and they'll go after certain people and harass them. If this happens, they'll find themselves in the hot seat and the chief will take over at that time. As far as them being targeted, they don't have to worry about that. I feel confident that the guys who work here are good, they're straight level-headed. They're good people for the job."

65.    Upon information and belief, police officers employed by the City of Monte Vista have abused their authority in encounters with other citizens:

    a.   A Monte Vista police officer used excessive force in pulling Devon Valdez, an unarmed, small woman, from a vehicle during an investigative stop. The force used by the officer cracked Ms. Valdez' skull.

    b.   A Monte Vista police officer lied during a hearing for the renewal of a Monte Vista business owner's liquor license.

    c.   City Councilmember Joe Schlabach stated in his videotaped interview with

14

Corporal Eduardo Rodriguez that "The appearance in the community of both Officers Pino is that they are somewhat heavy-handed."

66.     Upon information and belief, Defendants Pino, Rodriguez, Masias, Martinez, Lopez and Grayson acted in concert to fabricate charges of harassment against Plaintiff Dominguez.

67.     Officer Robert Pino used his authority as an officer of the law to intimidate and harass Mr. Dominguez.

68.     Upon information and belief, Officer Robert Pino used his authority as an officer of the law to encourage other employees of the Monte Vista Police Department to intimidate and harass Mr. Dominguez.

69.     Upon information and belief, Officer Robert Pino used his authority as an officer of the law to discredit Mr. Dominguez' version of events, and to persuade other members of the Monte Vista Police Department to bring charges against Dominguez based on the false information that he supplied.

70.     Mr. Dominguez was served on January 19, 2016 with a Summons & Complaint alleging that Dominguez had engaged in harassment in violation of § 18-9-111(1)(a)(h), C.R.S. on December 14, 2015 at approximately 11:15 a.m. at 1905 Newcomb St. (Alley), Monte Vista, CO 81144.

71.     The Summons & Complaint was signed by E. Rodriguez, Badge No. 206.

72.     The Summons ordered Mr. Dominguez to appear in the Rio Grande County Court to answer to the charges on May 22, 2016.

73.     On January 19, 2016, Mr. Dominguez retained counsel to defend against the

harassment charge filed against him.

74. On February 25, 2016, case number 2016M9 was dismissed without prejudice upon the People's Motion and Statement on Dismissal.

75. Mr. Dominguez has observed the following retaliatory conduct on the part of the police Defendants since he spoke at the City Council meeting on December 17, 2015:

    a. Mr. Dominguez an increase in the number of police vehicles driving by his home and down the Alley between his residence and the Pino residence.

    b. Mr. Dominguez vehicles belonging to the Monte Vista Police Department following him around the community at an increased frequency since the events described herein.

    c. On or about June 15, 2016, Mr. Dominguez was driving westbound on Highway 160 into town when he passed a Monte Vista Police Department vehicle preparing to make a left turn onto Sherman Road. As Dominguez passed, the officer driving the vehicle did a U-turn and instead followed Dominguez for nearly a mile, all the way to his home without stopping him.

76. Mr. Dominguez has suffered harm to his reputation as a result of the Defendants' conduct.

77. Mr. Dominguez has experienced sleeplessness, stress, disruptive anger and anxiety since the events described herein.

78. Mr. Dominguez has been diagnosed with post-traumatic stress disorder as a result of the conduct of the defendants.

79. Mr. Dominguez has suffered increased sugar levels and high blood pressure as a

result of the Defendants' conduct.

WHEREFORE, the Plaintiff seeks damages in an amount to be proven at trial.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Deprivation of 1st Amendment Right to Freedom of Speech Against All Defendants)

80. Mr. Dominguez incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

81. The Defendants' conduct in bringing a criminal charge of harassment against Mr. Dominguez without probable cause was chilling to the Dominguez' constitutionally protected right to freedom of speech in contravention of the First Amendment.

82. The Defendants were acting under color of law when they issued a criminal complaint and summons to Mr. Dominguez alleging that he had committed harassment as defined by C.R.S. § 18-9-111(1)(a)-(h) without probable cause.

83. The officers responding to the events in the Alley, Defendants Rodriguez and Martinez, closed the case and determined not to file any charges on or about December 15, 2015.

84. Mr. Dominguez engaged in activity protected by the First Amendment when he spoke publicly about his encounters with the Pino family and the Monte Vista Police Department at the Monte Vista City Council meeting on December 17, 2015.

85. After Mr. Dominguez spoke publicly about his encounters with the Pino family and the Monte Vista Police Department, Chief James Grayson directed Corporal Eduardo Rodriguez to reopen the case and initiate an investigation into the events in the Alley between Mr. Dominguez, Defendant Robert Pino, and Defendant Robert Pino's family.

86.     After Mr. Dominguez spoke publicly at the Monte Vista City Council meeting, the Monte Vista Police Department reversed its initial determination not to file charges and served Dominguez with a criminal Complaint and Summons alleging that Dominguez had committed harassment under C.R.S. § 18-9-111(1)(a)-(h).

87.     The Defendants' decision to bring a criminal charge of harassment against Mr. Dominguez was motivated by a desire to retaliate against him for speaking at the City Council Meeting, and/or to discourage him from speaking publicly in the future about his encounters with Defendant Pino and the Monte Vista Police Department.

88.     There is a realistic and reasonable likelihood that the decision to bring a criminal charge against Mr. Dominguez would not have occurred but for the hostility and punitive animus harbored by Defendant Pino and his fellow officers toward Dominguez because he exercised his legal right to free speech at the Monte Vista City Council meeting.

89.     The Defendants are liable to Mr. Dominguez in an amount to be determined at trial for damages and attorney fees and costs as allowed by 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, the Plaintiff seeks damages against the Defendants in an amount to be proven at trial and for attorney fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Deprivation of 14th Amendment Right to Equal Protection of the Laws)

90.     Mr. Dominguez incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

91.     The Defendants' conduct deprived Mr. Dominguez of his right to equal protection of the law in contravention of the Fourteenth Amendment of the United States Constitution.

92.     The Defendants were acting under color of law when they issued a criminal complaint and summons to Mr. Dominguez alleging that he had committed harassment as defined by C.R.S. § 18-9-111(1)(a)-(h) without probable cause.

93.     The Defendants singled Mr. Dominguez out as a target for improper use of process.

94.     Upon information and belief, this conduct was motivated by loyalty to a "brother in blue" and a desire to exact retribution for Mr. Dominguez' dispute with the Pino family and his speech about the incident at the Monte Vista City Council meeting.

95.     No legitimate government interest could justify the decision to bring a criminal charge against an innocent citizen without probable cause.

96.     The Defendants are liable to the Plaintiff in an amount to be determined at trial for damages and attorney fees and costs as allowed by 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, the Plaintiff seeks damages against the Defendants in an amount to be proven at trial and for attorney fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**THIRD CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Deprivation of 5th and 14th Amendment Right to Procedural Due Process)**

97.     Mr. Dominguez incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully restated herein.

98.     The Defendants' conduct deprived the Plaintiff of due process of law in contravention of the Fifth and Fourteenth Amendments of the United States Constitution.

99.     This represents the kind of unjustified intrusion upon Mr. Dominguez' liberty that the Fifth and Fourteenth Amendments are designed to protect against.

100.    The Monte Vista Police Department acted egregiously by misusing its authority to investigate and charge an innocent citizen with a crime in an effort to exact retribution on behalf of a fellow officer.

101.    The Defendants abused their authority to file criminal charges in order to injure an innocent person's reputation and standing in the community.

102.    This conduct shocks the conscience.

103.    The Defendants are liable to Mr. Dominguez in an amount to be determined at trial for damages and attorney fees and costs as allowed by 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, the Plaintiff seeks damages against the Defendants in an amount to be proven at trial and for attorney fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## FOURTH CLAIM FOR RELIEF

**(Malicious Prosecution Against Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, Forrest Neuerburg, and the City of Monte Vista)**

104.    Mr. Dominguez incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

105.    The State of Colorado, through the police department of the City of Monte Vista and the individual defendants named in this claim for relief, brought a criminal case against Mr. Dominguez for harassment as defined by C.R.S. § 18-9-111(1)(a)-(h).

106.    The prior action ended in favor of Mr. Dominguez. The matter was dismissed without prejudice on February 25, 2016.

107.    The Defendants did not have probable cause to bring the action for harassment against Mr. Dominguez.

108.    The Summons and Complaint issued to Mr. Dominguez was supported by reports containing false statements and omissions made by Officer Robert Pino, Steven Pino, Bobby Pino, Isabella Pino, and Ordinance Officer Thomas Masias.

109.    The Defendants acted with malice in bringing harassment charges against the Plaintiff:

    a.  As they investigated the events regarding the encounters between Mr. Dominguez and the Pino family, Defendants Eduardo Rodriguez, Michael Martinez, Evan Lopez, and James Grayson turned a blind eye to facts supporting Dominguez' version of events in order to support and protect Officer Robert Pino, a "brother in blue."

    b.  The Defendants failed to identify or interview witnesses with information that

contradicted the false information provided by Officer Robert Pino, his family members, and Ordinance Officer Thomas Masias.

110.    The City of Monte Vista, through its former Chief of Police James Grayson and City Manager Forrest Neuerburg, instituted policies which authorized its officers and staff to fabricate information about Mr. Dominguez in order to bring a harassment charge unsupported by probable cause.

111.    The Defendants worked together to build a case based on false information about Mr. Dominguez.

112.    The Defendants worked together to bring a criminal charge against Mr. Dominguez in retribution for his disagreement with the Pino family about the debris in the Alley.

113.    The Defendants worked together to bring a criminal charge against Mr. Dominguez in retribution for speaking publicly about the events at the City Council Meeting.

114.    Mr. Dominguez suffered damages as a result of the Defendants' conduct as follows:

a.  Mr. Dominguez incurred attorney fees as a result of the Defendants' conduct.

b.  Mr. Dominguez incurred costs as a result of the Defendants' conduct.

c.  Mr. Dominguez suffered psychological damage and emotional distress from the shock of unfounded allegations of harassment contained in the Complaint with which he was served.

d.  Mr. Dominguez suffered harm to his reputation in the community as a result of the Defendants' conduct.

WHEREFORE, the Plaintiff seeks damages against the Defendants in an amount to be proven at

trial, as well as pre-judgment interest as allowed by law.

## FIFTH CLAIM FOR RELIEF
**(Intentional Infliction of Emotional Distress Against Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, and Forrest Neuerburg)**

115.     Mr. Dominguez incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

116.     Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, and Forrest Neuerburg engaged in extreme and outrageous conduct by filing a meritless criminal charge against Mr. Dominguez in retribution for his dispute with the Pino family over the debris in the Alley and his public speech about the incident at the City Council meeting.

117.     Defendants Pino, Rodriguez, Lopez, Grayson, and Neuerburg did so recklessly or with the intent of causing Mr. Dominguez severe emotional distress.

118.     The conduct of Defendants Pino, Rodriguez, Lopez, Grayson, and Neuerburg caused Mr. Dominguez severe emotional distress.

WHEREFORE, the Plaintiff seeks damages from the Defendants in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

**(Abuse of Process Against Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, and Forrest Neuerburg)**

119.　　Mr. Dominguez incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully restated herein.

120.　　Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, and Forrest Neuerburg had an ulterior motive or purpose for filing a criminal charge of harassment against Mr. Dominguez.

121.　　The Defendants were acting in retribution for Mr. Dominguez' dispute with the Pino family over debris in the Alley and/or for his public speech about the incident at the City Council meeting.

122.　　Defendants Robert Pino, Eduardo Rodriguez, Evan Lopez, James Grayson, and Forrest Neuerburg willfully served Mr. Dominguez with a criminal Complaint and Summons without probable cause, which is not proper in the regular course of the proceedings.

123.　　Mr. Dominguez suffered damages as a result of the Defendants' conduct.

WHEREFORE, the Plaintiff seeks damages from the Defendants in an amount to be proven at trial.

WHEREFORE, Mr. Dominguez prays that the Court enter judgment in his favor as follows:

a. Judgment against the Defendants in amounts to be determined at trial, plus pre-judgment interest calculated from December 11, 2015;

b. Judgment against the Defendants for reasonable attorneys' fees and costs pursuant to 42

U.S.C. §§ 1983 and 1988; and

c.   Judgment for such other and further relief as the Court may deem just and equitable under the circumstances.

**Plaintiff requests a trial by jury pursuant to Fed. R. Civ. P. 38(b).**

Respectfully submitted this 11th day of December, 2017.

LEVIN JACOBSON JAPHA, PC

By: _S. Hammann_
Stephanie L. Hammann, Esq.
950 S. Cherry St., Ste. 912
Denver, Colorado 80246
Telephone: (303) 504-4242
Facsimile:   (303) 691-9719
E-mail: shammann@ljjlaw.com

*Attorneys for Plaintiff*
*Telesforo J. Dominguez*

Plaintiff's address:

C/o Levin Jacobson Japha, PC
950 S. Cherry St., Ste. 912
Denver, CO 80246